IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-01479-REB-MJW


WILLIAM J.  HUNSAKER, JR.,

Plaintiff,

v.

JAMES JIMERSON,
MICHELLE NYCZ,
ELIZABETH LIMBRIS,
CATHIE HOLST, individually and in their official capacities as agents and employees of
the Sterling Correctional Facility,
COLORADO DEPARTMENT OF CORRECTIONS, and
ARISTEDES ZAVARAS, individually and in his official capacity as Executive Director of
the Colorado Department of Corrections,

Defendants.

---

## AMENDED[1] RECOMMENDATIONS ON
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Docket No. 47)
## and
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT
## (Docket No. 38)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


        This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by Judge Robert E. Blackburn on September 4, 2008.  (Docket

No. 5).

---

        [1]The court's report and recommendation issued on July 7, 2010 (Docket No. 54)
is amended to reflect in the last paragraph that the parties have 14 days, not 10 days, to
file objections.

**PLAINTIFF'S ALLEGATIONS**

The operative pleading is the pro se incarcerated plaintiff's Third Amended Complaint (Docket No. 37) which is brought pursuant to 42 U.S.C. § 1983. Plaintiff seeks declaratory and injunctive relief and compensatory and exemplary damages. He asserts the following three claims in that pleading.

**Claim One**

Plaintiff has had active subscriptions to several periodicals that were regularly delivered to Sterling Correctional Facility including Maxim, Sunset, Rolling Stone, Newsweek, and the Rocky Mountain News. From November 2007 through February 2009, plaintiff had many such publications denied as detailed in his Third Amended Complaint, and defendants continue to deny and censor his mail and periodicals. Plaintiff filed numerous appeals to the Central Reading Committee pursuant to Colorado Department of Corrections ("CDOC") Administrative Regulation ("AR") No. 300-26 to no avail. Other inmates are permitted to receive the same publications to which plaintiff has subscriptions without censorship and are even permitted to receive publications that contain full nudity, e.g., Playboy and Penthouse, without censorship. Through such censorship of plaintiff's magazines from four publishers and one book, defendants Jimerson, Nyez, Holst, Milyard, and the CDOC violated plaintiff's First, Fifth, and Fourteenth Amendment rights. In addition, AR 300-26A is unconstitutionally vague, ambiguous, and/or over-broad.

**Claim Two**

Plaintiff is incarcerated based upon a conviction of a crime of a sexual nature. Defendants Limbris, Milyard, and Zavaras and other employees of defendant CDOC

should have known the nature of such crime and knew or should have known that sex offenders are targeted by other inmates for exploitation, intimidation, extortion, and assault while incarcerated, creating a substantial risk of serious harm.  Limbris, Milyard, and Zavaras failed to take reasonable measures to abate such a substantial risk of serious harm to plaintiff and showed deliberate indifference and reckless disregard of the substantial risk of material harm to plaintiff.  Plaintiff was brutally assaulted and severely beaten by another inmate in plaintiff's own cell on October 18, 2007.  Plaintiff sustained serious bodily injuries, including lacerations and multiple contusions to his face and head necessitating medical treatment including several sutures on his face resulting in scarring and disfigurement.  Libris, Milyard, Zavaras, and the CDOC thus violated plaintiff's civil rights, and their actions constituted cruel and unusual punishment under the Eighth and Fourteenth Amendment.

### Claim Three

Defendants Milyard, Zavaras, and the CDOC employed a dentist.  On more than one occasion since October 28, 2006, plaintiff requested dental treatment from Milyard, Zavaras, and CDOC consisting of a cleaning of all of plaintiff's teeth, and plaintiff offered to compensate defendants for such treatment.  In response, defendants on more than one occasion denied such treatment, stating they do not provide treatment such as teeth cleaning to inmates, including plaintiff.  Defendants provided dental treatment to other SCF inmates including tooth extractions and the manufacturing and fitting of dental appliances.  Inmates at other CDOC facilities receive dental cleaning upon request, and thus plaintiff's right to equal protection under the laws of the State of Colorado has been violated.  The denial of plaintiff's request for dental cleaning showed

deliberate indifference to plaintiff's serious medical needs and was done with malice and a willful and wanton disregard of his rights and safety.

**PENDING MOTIONS**

Now before the court for report and recommendation are two motions. Plaintiff has filed a Motion for Preliminary Injunction (Docket No. 47) to which defendants filed a Response (Docket No. 49), and plaintiff filed a Reply (Docket No. 53). Defendants have filed a Motion to Dismiss Plaintiff's Third Amended Complaint (Docket No. 38) to which plaintiff filed a Response (Docket No. 46). The court has very carefully reviewed these motion papers and has considered the court's file and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings, conclusions of law, and recommendations.

### Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction enjoining the censorship and denial of his issues of Maxim, Rolling Stone, Newsweek, and all other non-sexually explicit mail. Injunctive relief is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. See Schrier v. University of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, the party requesting injunctive relief must establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. Id. Furthermore, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be

held, . . . [the Tenth Circuit has] identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." Id. at 1258-59 (citation and quotations omitted). In such a case, before the court enters preliminary injunctive relief, the movant must make a heightened showing of the four factors. RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1209 (10th Cir. 2009). "[W]hen the moving party demonstrates that the 'exigencies of the case require extraordinary interim relief,' the district court may grant the motion upon satisfaction of the heightened burden." Id. Furthermore, this court also "considers well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. . . . Courts should grant injunctive relief involving the management of prisons . . . only under exceptional and compelling circumstances." Walker v. Meyer, 2009 WL 1965493, *4 (D. Colo. July 8, 2009) (citations omitted).

In response, defendants note that plaintiff is a convicted sex offender, currently serving a sentence for convictions of Sexual Assault on a Child and Sexual Assault on a Child - Pattern of Abuse. They contend that the plaintiff has not shown substantial likelihood of success on the merits of the case, and thus his motion for a preliminary injunction should be denied. This court agrees with the defendants.

The CDOC has a policy, AR 300-26, which restricts certain types of materials from offenders and makes specific provisions for offenders, like the plaintiff, who are identified as sex offenders. (See Docket No. 49-3). In pertinent part, the regulation

provides as follows:

IV. PROCEDURES

    A. General Principles

1.     Reading material shall be permitted subject to fire, health, safety, and property allowance restrictions, unless such material poses a threat to the security or good order of the facility or office, or is determined to be contrary to public safety or the individualized rehabilitative goals set forth in writing for a specific offender by the DOC.

. . .

5.     For rehabilitation purposes, Mental Health or Sex Offender Treatment Program DOC employees/contract workers may set more stringent standards, in writing for a specific offender, regardless of the offender's participation in the Sex Offender Treatment and Moitoring Program (SOTMP), or other mental health program.

. . .

8.     Reading materials that describe sexually explicit behavior, received or sent by non sex offenders, shall not be routinely reviewed or censored; however, if DOC employees, contract workers, or volunteers become aware than [sic] an offender receives or has possession of reading materials that describe illegal sexual behavior of sexual behaviors that pose a public safety concern, the materials will be submitted to the facility reading committee for review. Only reading materials that depict sexually explicit behavior are subject to routine review and censorship.

9.     Reading materials that depict and/or describe sexually explicit behavior, received or sent by sex offenders, shall be subject to routine review and censorship.

    B. Review Criteria

1.     Upon assessing reading material, the review committee shall determine whether the material or publication is detrimental to security, good order, public safety, or individualized rehabilitative goals. . . .

2.      As a guide, the following materials are among those that shall be censored:

. . .

d.      Sexually explicit material.  (See definition in Section III, "Definitions.") . . . .

(Docket No. 49-3 at 2-3, AR 300-26(IV)).  "Sexually explicit material" is defined in the AR as "[m]aterials which clearly depict or describe bestiality, pedophilia, sadism, masochism, necrophilia, discharge of bodily fluids, or, anal or vaginal penetration by animate or inanimate objects, or oral sex."  (Docket No. 49-3 at 2, AR 300-26(III)(I)).

The AR provides procedures for review of such reading material.  Included in those procedures is a provision that "[i]f four or fewer pages contain censored material, the item may be allowed with the censored pages removed.  If five or more pages contain censored reading material, the item will be excluded in its entirety.  (A page is considered one side.)" (Docket No. 49-3 at 4, AR 300-26(IV)(b)).

In this case, more restrictive standards have been set forth in writing for the sex offender plaintiff, restricting him from having in his possession materials that have been determined to be contrary to his rehabilitation interests and goals.  The AR Form 300-26E for the plaintiff states in pertinent part that:

For rehabilitative purposes and in order to bring the Colorado Department of Corrections (DOC) into compliance "E" . . . and AR 300-26 IV.B.2.a-f, DOC Mental Health Services and the SOTMP are hereby directing you [plaintiff] not to subscribe to or have in your possession any sexually oriented magazines or periodicals, or other reading or viewing material deemed to be pornographic or contrary to your individualized rehabilitative interests and goals.

Material that is generally deemed contrary to rehabilitative interests and goals for sex offenders is as follows:

1.    Sexually explicit material as defined by AR 300-26.
2.    Pornographic material: Materials that show unclothed genitals, buttocks or female breasts.
3.    Material that has significant risk of escalating the sex offender's deviant sexual arousal or their cycle of abuse - for example pictures of scantily clothed individuals who are depicted being humiliated, subject to an act of violence, being restrained, objectified, being otherwise degraded, or pictures of the offender's victim.
4.    Material that depicts or by way of description promotes criminal sexual behavior.
5.    Pictures related directly to a potential victim pool of the individual offender, such as collections of pictures of children by pedophiles.

. . .

The above named offender [plaintiff] is not allowed to have in his /her possession the following specific types of materials as they have been determined to be contrary to rehabilitation interests and goals: Example: Offender convicted of a sexual offense against a minor.  He admits to sexually assaulting a 4 yr. old male.  Admits having a problem with objectifying deviant arousal to both male pre-school age children & adult women.  Should not be allowed to view above listed materials 1-5 as it may hinder his rehabilitative goals.  Viewing such materials, specifically depicting adult women & male children may exacerbate his deviant sexual arousal & behavior.  Should not view materials which show partially nude (without entire breasts, buttocks & genitalia clothed) adult women or male children as these materials promote his sexual assault cycle and encourage his objectification of adult women and male children.

Offender Hunsaker [plaintiff] was convicted of two counts of Sexual Assault on a Child.  The victim was an 11 year old female and her 10 year old brother.  Offender Hunsaker contacted the co-defendant over the internet and arranged to meet the victims in person with sexual intent.  Offender used coercion and position of trust to have unwanted sexual contact with the victims.  Offender admitted to using drugs and alcohol during offense.  Documents also suggest Offender's interest in child pornography, incest, and bestiality.

Offender Hunsaker should not be allowed to view material that has a risk of escalating his deviant sexual arousal or his cycle of sexual abuse.  Such material is detrimental to his treatment and his ability to effectively control his sexually deviant behavior.  The above 1-5 should be restricted as well as the below list of material.  Possible restricted material would consist of pictures, descriptions, symbols, representations, and/or third party information that describes or implies from or about the material listed

below.

1.  Offender Husaker should not have sexually explicit material containing images or descriptions of masturbation, discharge of bodily fluids, sexual paraphernalia, voyeurism, exhibitionism, oral sex, sadism, masochism, bondage, penetration, anal sex, and/or sexual intercourse.
2.  Offender Hunsaker should not have material containing images or descriptions of unclothed, transparent, and/or partially clothed individuals revealing genitals, buttocks and /or breasts of males/females.
3.  Material with a risk of escalating Offender Hunsaker's deviant sexual arousal or cycle containing images or descriptions of males/females dressed sexually provocative or posed in a sexually compromising position. He should not have any material that associates alcohol, drugs, internet and sexuality.
4.  Offender Hunsaker should not be allowed material containing images of males/females that promotes or portrays males/females being objectified. Material that is intended for minors should not be allowed. He should not have material that portrays minors in adult situations or as adults. He should not participate in pen pal relationships with minors. This would include material created by minors or appears to have been created by a minor.
5.  Offender Hunsaker's identified victim pool is that of pre-pubescent males and females. He should not be allowed to see any material containing images or descriptions of persons under the age of 18 or appear to be persons under the age of 18. He should not be allowed any material from or about the victims, or that appears to be from or about the victims. This does not include Sex Offender Treatment and Monitoring Program (SOTMP) reading material and/or homework assignments.

(Docket No. 49-2 at 1-2).

Based upon the above criteria and provisions in AR 300-26, a number of publications were withheld from the plaintiff. Plaintiff contends that such publications are non-sexually explicit mail. Defendants, however, have submitted to the court an example of material that was censored from one such publication, the plaintiff's January 2010 issue of Maxim magazine, because it contained five or more pages of pictures that are contrary to plaintiff's individualized rehabilitation. (Defs.' Ex. D). The court's review

of such censored pages establishes that they do, in fact, fall within the restrictions placed upon plaintiff based upon his individualized rehabilitative goals, including the restriction on possessing material containing images or descriptions of unclothed, transparent, and/or partially clothed individuals revealing genitals, buttocks and /or breasts of males/females, and some of the material is proscribed by the AR because it describes sexually-explicit behavior.

In addition, as defendants correctly note, an "as applied" First Amendment claim very similar to those raised by plaintiff here was rejected by this court. Frazier v. Ortiz, 2010 WL 924254 (D. Colo. Mar. 10, 2010). In Frazier, the inmate contended that defendants violated his First Amendment rights by interfering with and censoring his mail, in particular, various issues of Rolling Stone, Maxim, Spin, Billboard, and Blender magazines. Notably, some of those magazines are the same censored in this case.

This court thus finds that the plaintiff has not established for purposes of his motion for injunctive relief that the regulation is unconstitutional as applied. Furthermore, in Frazier AR 300-26 was analyzed using the factors first outlined in Turner v. Safley, 482 U.S. 78, 89 (1987), and was found to be constitutional on its face. Based upon the reasoning set forth in Frazier, plaintiff's claim that the regulation is unconstitutional on its face likewise fails. See Ind v. Wright, 52 Fed. Appx. 434 (10th Cir. Nov. 25, 2002) (utilizing Turner factors and standard in Thornburgh v. Abbott, 490 U.S. 401 (1989), found AR 300-26 to be facially valid in the context of a denial of religious material); Rooks v. Zavares, 2001 WL 34047959, *8 (D. Colo. Jan. 25, 2001) (same).

This court thus finds that the plaintiff has failed to show a likelihood of success on the merits. Based on that finding, the court need not analyze the three additional

elements that must be established to obtain a preliminary injunction.  Caught Fish

Enterprises, LLC v. Action Mfg., LLC, 2010 WL 2508397, *2 (D. Colo. June 17, 2010).

Therefore, it is recommended that the plaintiff's motion for a preliminary injunction be

denied.

### Motion to Dismiss

Defendants seek dismissal of the Third Amended Complaint pursuant to Fed. R.

Civ. P. 12(b)(1) and (6) on the following grounds: (1) The CDOC and the individual

defendants in their official capacities are immune from liability; (2) the Complaint fails to

state a claim under any theory because (a) plaintiff has no First Amendment right to

receive sexually explicit materials; (b) the AR governing inmate reading material is

constitutional; (c) plaintiff fails to state a due process claim; (d) plaintiff fails to state an

equal protection claim; (e) plaintiff has not shown the defendants' personal participation

in the violation alleged in the second claim for relief; (f) plaintiff's Eighth Amendment

dental cleaning claim fails because plaintiff has not alleged that not having his teeth

cleaned by dental personnel on a regular basis is sufficiently serious and has failed to

allege that any defendant acted with deliberate indifference and indeed fails to

sufficiently alleged defendants' personal participation; (3) plaintiff fails to state a claim

for damages; and (4) defendants are entitled to qualified immunity.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the
subject matter."  Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction,
federal courts may only adjudicate cases that the Constitution and
Congress have granted them authority to hear.  See U.S. CONST. art. III,
§ 2; Morris v. City of Hobart, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes
conferring jurisdiction on federal courts are to be strictly construed.  See F
& S Constr. Co. v. Jensen, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule

12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 545 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is proceeding without counsel, his pleading has been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Eleventh Amendment Immunity.** An assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the court. Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002). Here, this court agrees with the defendants the plaintiff's claims against the CDOC should be dismissed pursuant to the Eleventh

Amendment.  See Griess v. State of Colo., 841 F.2d 1042, 1044-45 (10th Cir. 1988).

The CDOC is deemed to be an arm of the state, and thus all claims against it are barred

by the Eleventh Amendment.  Peoples v. Zavares, 2008 WL 139239, *1 (D. Colo. Jan.

11, 2008).  In addition, the CDOC is not a "person" for purposes of § 1983 actions.  See

Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989).  Furthermore, "the

United States Supreme Court has previously held that Congress did not abrogate

states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983."  Ruiz, 299

F.3d at 1181 (citing Quern v. Jordan, 440 U.S. 332, 345 (1979)).  Plaintiff neither

alleges in his Third Amended Complaint nor is there any other indication in the record

that the state waived its Eleventh Amendment immunity in this case.  This court thus

finds that all claims against the CDOC, including damages, injunctive, and declaratory

relief, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter

jurisdiction.  See Smith v. Plati, 56 F. Supp.2d 1195, 1200-01 (D. Colo. 1999) (The

Eleventh Amendment provides absolute immunity regardless of the nature of the relief

sought.), aff'd, 258 F.3d 1167 (10th Cir. 2001), cert. denied, 537 U.S. 823 (2002).

In addition, "the Eleventh Amendment precludes a federal court from

assessing damages against state officials sued in their official capacities because

such suits are in essence suits against the state."  Hunt v. Bennett, 17 F.3d 1263,

1267 (10th Cir. 1994).  Therefore, it is recommended that any claim for damages

against the individual defendants in their official capacities be dismissed with prejudice.

**Censorship Claim.**  Defendants assert that Claim One fails as a matter of law.

Defendants contend that the plaintiff has no First Amendment right to receive sexually-

explicit materials and that the AR is constitutional.  Plaintiff's Third Amended Complaint,

however, claims that the censored materials were not sexually-explicit. Accepting the allegations in the pleading as true and resolving all reasonable inferences in the plaintiff's favor, this court finds that plaintiff has pled enough to survive a motion to dismiss the First Amendment "as applied" claim. While the defendants have shown in their response to the motion for a preliminary injunction an example of censored material from one of the plaintiff's magazines, the motion now before the court is not a motion for summary judgment, but a motion to dismiss pursuant to 12(b)(6). Therefore, the court cannot consider such material that is outside the pleadings. Consequently, at this stage of the proceedings, based merely on a motion to dismiss, this court finds that the plaintiff's challenge to the AR "as applied" survives. As found above, however, the challenge to the AR "on its face" should not survive based upon the findings in Frazier, 2010 WL 924254.

Next, defendants contend that the plaintiff fails to state a due process claim. This court agrees. "[T]he requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands' . . . ." Wilkinson v. Austin, 545 U.S. 209, 224 (2005). In Procunier v. Martinez, 416 U.S. 396 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989), the Court held that "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." Id. at 417. The procedural threshold was satisfied in Martinez by the requirements that "an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved of the correspondence." Id. at 418-19.

Here, the allegations in the Third Amended Complaint indicate that the plaintiff received adequate procedural due process. He was notified of the questionable materials, the materials were reviewed by a facility reading committee, and the plaintiff had a right to appeal the committee's decision to a CDOC central reading committee. See Jordan v. Sosa, 577 F. Supp.2d 1162 (D. Colo. 2008); Strope v. Collins, 492 F. Supp.2d 1289, 1297-98 (D. Kan 2007) (inmate plaintiffs were afforded all of the procedural due process that was constitutionally required in the denial of access to publications by being given written notice of the withholding of the magazines and having the opportunity to grieve the censorship and appeal those decisions to prison officials who were not involved in the original censorship decisions.). Therefore, plaintiff was afforded an adequate procedural protection to comply with due process requirements.

Finally, defendants correctly assert that the plaintiff has failed to state an equal protection claim. "The Equal Protection Clause requires the government to treat similarly situated people alike. . . . In order to assert a viable equal protection claim, plaintiff[] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]." Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998). Here, plaintiff does not identify any similarly-situated inmates who were treated differently. See Smith v. Ortiz, 2006 WL 620871, *3 (10th Cir. Mar. 14, 2006). See also Hernandez v. Soares, 2006 WL 2050990, *6 (D. Colo. July 20, 2006) (Civil Action No. 02-cv-01495-MSK-BNB). Plaintiff merely avers that other inmates are able to receive the same magazines and other publications with full nudity. Plaintiff, however, fails to aver that such inmates, like plaintiff, are sex offenders for which there are more restrictions with regarding to receipt of reading material.

**Failure to Protect Claim.**  In Claim Two, plaintiff asserts that he was assaulted by another inmate in October 2007 and that defendants should have known that as a convicted sex offender, plaintiff was subject to assaults by other inmates.

With regard to a prisoner's failure to protect claim, the Tenth Circuit has stated:

> "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." . . .  "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." . . .  In *Farmer* [*v. Brennan*, 511 U.S. 825, 833 (1994)], the Supreme Court clarified the "deliberate indifference" standard, explicitly rejecting a purely objective test and holding that the Eighth Amendment deliberate indifference standard has a subjective component. . . .  A prison official who "knows of and disregards an excessive risk to inmate health or safety" is deliberately indifferent for these purposes. . . . Therefore, in order to establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm," the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component. . . .

Benefield v. McDowall, 241 F.3d 1267, 1270-71 (10th Cir. 2001) (citations omitted).

Furthermore, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

As the Tenth Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates.  "[T]here is no concept of strict supervisor liability under § 1983." . . .  "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates.  It does mean that his liability is not vicarious, that is, without fault on his part." . . . .

> Supervisors are only liable under § 1983 for their own culpable

involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . . In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .

In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . . In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations omitted).

Reading the Third Amended Complaint in the light most favorable to the plaintiff, this court finds that the plaintiff has not alleged any specific facts which plausibly support the requisite personal involvement of the defendants in the failure to protect claim. Plaintiff has not alleged facts that demonstrate a substantial risk of serious harm or deliberate indifference. His allegations are merely conclusory allegations without supporting factual averments sufficient to state a claim on which relief can be granted. There is no allegation that the defendants actually knew there was a substantial risk of serious harm to the plaintiff, and plaintiff's contention that he was in danger because of his status as a sex offender also cannot support his § 1983 claim because he has not even alleged that he was attacked because he is a  sex offender. See Lane v. Klingler,

25 Fed.Appx. 781, 783, 2001 WL 1580988, **1 (10th Cir. Dec. 12, 2001)(citing <u>Riddle v.</u> <u>Mondragon</u>, 83 F.3d 1197, 1205 (10th Cir. 1996)).

**Dental Claim.**  Defendants seek dismissal of plaintiff's dental claim, asserting that it fails to state a claim upon which relief can be granted.  This court agrees. "[P]risoners have an Eighth Amendment right to adequate medical care . . . ." <u>Oxendine</u> <u>v. Kaplan</u>, 241 F.3d 1272, 1276 (10th Cir. 2001).  "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" <u>Id.</u>  However, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." <u>Mata v. Saiz</u>, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted).

In this case, this court agrees with defendants that plaintiff's pleading fails to allege facts, which if proven, would support a finding that his need for dental cleaning by a dental professional was a sufficiently serious medical need.  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Hunt v. Uphoff</u>, 199 F.3d 1220, 1224 (10th Cir. 1999). Here, in plaintiff's allegations in the Third Amended Complaint are insufficient to meet the objective standard.  See <u>Crownhart v. Hernandez</u>, 2009 WL 3273580, * (D. Colo. Oct. 9, 2009) (Inmate alleged that he had a toothache and needed a molar to be

cleaned and complained about various one-month delays.  Court found that the

inmate's pleading failed to allege facts, which if proven, would support a finding that his

need for dental treatment was a sufficiently serious medical need.).  The court thus finds

that the plaintiff's Eighth Amendment claim concerning his dental care (Claim Three)

should be dismissed with prejudice for failure to state a claim.

     **WHEREFORE,** for the foregoing reasons it is hereby

     **RECOMMENDED** that the Plaintiff's Motion for Preliminary Injunction **(Docket

No. 47)** be **denied**.  It is further

     **RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's Third Amended

Complaint **(Docket No. 38)** be **granted in part and denied in part**.  More specifically,

it is recommended that the following claims be dismissed with prejudice: the claims

against the Colorado Department of Corrections, the claims against the individual

defendants in their official capacities, the claims in Claim One concerning the

validity of Administrative Regulation 300-26 on its face and violations of due

process of law and equal protection, and Claims Two and Three.  In all other

respects, it is recommended that the motion to dismiss be denied.  As a result, the

only claim remaining would be the claim contained in Claim One concerning the

alleged unconstitutionality of AR 300-26 as applied.

     **NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),

the parties have fourteen (14) days after service of this recommendation to serve

and file specific written objections to the above recommendation with the District

Judge assigned to the case.  A party may respond to another party's objections**

within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Date: July 9, 2010                      s/ Michael J. Watanabe
        Denver, Colorado               Michael J. Watanabe
                                  United States Magistrate Judge