IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   08-cv-01479-REB-MJW

WILLIAM J.  HUNSAKER, JR.,

Plaintiff,

v.

JAMES JIMERSON,
MICHELLE NYCZ,
ELIZABETH LIMBRIS,
CATHIE HOLST,
ARISTEDES ZAVARAS,

Defendants.

_____

**RECOMMENDATION ON
(1) PLAINTIFF'S MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT,
TO JOIN ADDITIONAL PARTIES AND TO FILE FOURTH AMENDED COMPLAINT
(Docket No. 78)
and
(2) PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND SUPPLEMENT
PLAINTIFF'S PROPOSED FOURTH AMENDED COMPLAINT AND TO JOIN
ADDITIONAL PARTIES (Docket No. 118)**

_____

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by Judge Robert E. Blackburn on September 4, 2008.  (Docket

No. 5).

**BACKGROUND**

Plaintiff commenced this action in July 2008 (Docket No. 2).  After filing the

original Complaint, plaintiff amended that pleading on December 15, 2008.  (Docket No.

2

12).  Defendants responded by filing a motion to dismiss (Docket No. 17), and before

the court ruled on that motion, plaintiff was granted leave to amend his pleading once

again.  (See Docket Nos. 28 and 36).  Thus, plaintiff's Third Amended Complaint

(Docket No. 37) was filed on August 17, 2009.  In that pleading, plaintiff asserted three

claims.  However, after an amended report and recommendation was issued by the

undersigned (Docket No. 57) and an Order Overruling Objection to and Adopting

Amended Recommendations of the United States Magistrate Judge was issued by

Judge Blackburn on August 20, 2010 (Docket No. 67), the following claims were

dismissed with prejudice: (1) all claims as against the Colorado Department of

Corrections ("CDOC") and (2) all claims for money damages against the individual

officers in their official capacities.  In addition, the following claims were dismissed

without prejudice: (1) the First Claim for Relief insofar as it asserts claims for violations

of plaintiff's due process and equal protection rights under the Fifth and/or Fourteenth

Amendments; (2) the First Claim for Relief insofar as it asserts a facial challenge that

CDOC Administrative Regulation ("AR") 300-26[1]

---

[1]AR 300-26 restricts certain types of materials from offenders and makes specific provisions for offenders, like the plaintiff, who are identified as sex offenders.  (See Docket No. 49-3).  In pertinent part, the regulation provides as follows:

IV.     PROCEDURES

A.     General Principles

1.     Reading material shall be permitted subject to fire, health, safety, and property allowance restrictions, unless such material poses a threat to the security or good order of the facility or office, or is determined to be contrary to public safety or the individualized rehabilitative goals set forth in writing for a specific offender by the DOC.

. . .

5.      For rehabilitation purposes, Mental Health or Sex Offender
        Treatment Program DOC employees/contract workers may
        set more stringent standards, in writing for a specific
        offender, regardless of the offender's participation in the Sex
        Offender Treatment and Moitoring Program (SOTMP), or
        other mental health program.

. . .

8.      Reading materials that describe sexually explicit behavior,
        received or sent by non sex offenders, shall not be routinely
        reviewed or censored; however, if DOC employees, contract
        workers, or volunteers become aware than [sic] an offender
        receives or has possession of reading materials that
        describe illegal sexual behavior of sexual behaviors that
        pose a public safety concern, the materials will be submitted
        to the facility reading committee for review.  Only reading
        materials that depict sexually explicit behavior are subject to
        routine review and censorship.

9.      Reading materials that depict and/or describe sexually
        explicit behavior, received or sent by sex offenders,
        shall be subject to routine review and censorship.

B.      Review Criteria

1.      Upon assessing reading material, the review
        committee shall determine whether the material or
        publication is detrimental to security, good order,
        public safety, or individualized rehabilitative goals. . . .

2.      As a guide, the following materials are among those that
        shall be censored:

. . .

        d.      Sexually explicit material.  (See definition in Section
                III, "Definitions.") . . . .

(Docket No. 49-3 at 2-3, AR 300-26(IV)).  "Sexually explicit material" is defined in the

4

violates plaintiff's right of free speech under the First Amendment; (3) the Second Claim

for Relief;[2] and (4) the Third Claim for Relief.[3]  As a result, the only claim remaining is

---

AR as "[m]aterials which clearly depict or describe bestiality, pedophilia, sadism, masochism, necrophilia, discharge of bodily fluids, or, anal or vaginal penetration by animate or inanimate objects, or oral sex." (Docket No. 49-3 at 2, AR 300-26(III)(I)).

    The AR provides procedures for review of such reading material.  Included in those procedures is a provision that "[i]f four or fewer pages contain censored material, the item may be allowed with the censored pages removed.  If five or more pages contain censored reading material, the item will be excluded in its entirety.  (A page is considered one side.)" (Docket No. 49-3 at 4, AR 300-26(IV)(b)).

    [2]In Claim Two, plaintiff asserted the following.  He is incarcerated based upon a conviction of a crime of a sexual nature.  Defendants Limbris, Milyard, and Zavaras and other employees of defendant CDOC should have known the nature of such crime and knew or should have known that sex offenders are targeted by other inmates for exploitation, intimidation, extortion, and assault while incarcerated, creating a substantial risk of serious harm.  Limbris, Milyard, and Zavaras failed to take reasonable measures to abate such a substantial risk of serious harm to plaintiff and showed deliberate indifference and reckless disregard of the substantial risk of material harm to plaintiff.  Plaintiff was brutally assaulted and severely beaten by another inmate in plaintiff's own cell on October 18, 2007.  Plaintiff sustained serious bodily injuries, including lacerations and multiple contusions to his face and head necessitating medical treatment including several sutures on his face resulting in scarring and disfigurement.  Libris, Milyard, Zavaras, and the CDOC thus violated plaintiff's civil rights, and their actions constituted cruel and unusual punishment under the Eighth and Fourteenth Amendment.

    [3]In Claim Three, plaintiff asserted the following.  Defendants Milyard, Zavaras, and the CDOC employed a dentist.  On more than one occasion since October 28, 2006, plaintiff requested dental treatment from Milyard, Zavaras, and CDOC consisting of a cleaning of all of plaintiff's teeth, and plaintiff offered to compensate defendants for such treatment.  In response, defendants on more than one occasion denied such treatment, stating they do not provide treatment such as teeth cleaning to inmates, including plaintiff.  Defendants provided dental treatment to other SCF inmates including tooth extractions and the manufacturing and fitting of dental appliances.  Inmates at other CDOC facilities receive dental cleaning upon request, and thus plaintiff's right to equal protection under the laws of the State of Colorado has been violated.  The denial of plaintiff's request for dental cleaning showed deliberate indifference to plaintiff's serious medical needs and was done with malice and a willful and wanton disregard of his rights and safety.

---

5

the claim contained in Claim One concerning the alleged unconstitutionality of AR 300-26 as applied. In that claim, plaintiff asserts that he has had active subscriptions to several periodicals that were regularly delivered to Sterling Correctional Facility including <u>Maxim</u>, <u>Sunset</u>, <u>Rolling Stone</u>, <u>Newsweek</u>, and the <u>Rocky Mountain News</u>. From November 2007 through February 2009, plaintiff had many such publications denied as detailed in his Third Amended Complaint, and defendants continue to deny and censor his mail and periodicals. Plaintiff filed numerous appeals to the Central Reading Committee pursuant to AR 300-26 to no avail.

**PENDING MOTIONS**

Now before the court for a report and recommendation are the following two motions: (1) Plaintiff's Motion for Leave to Amend Third Amended Complaint, to Join Additional Parties and to File Fourth Amended Complaint (Docket No. 78), and (2) Plaintiff's Motion for Leave to Amend and Supplement Plaintiff's Proposed Fourth Amended Complaint and to Join Additional Parties (Docket No. 118). Defendants filed a response to each motion (Docket Nos. 85 and 124), and plaintiff filed a reply to the first response (Docket No. 96). The court has carefully reviewed these motions papers, the court's file, and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed, makes the following findings, conclusions of law, and recommendations.

Plaintiff is proceeding *pro se.* The court must construe *pro se* filings liberally. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991). Defendants assert, however, that plaintiff is not necessarily entitled to liberal construction of his pleadings because prior to his incarceration he was

6

a practicing attorney who was disbarred in 2005.  (Docket No. 85 at 7 n.1).  The court

will nevertheless construe plaintiff's filings liberally but will not be his advocate, nor will

the court "supply additional factual allegations to round out [the *pro se* litigant's]

complaint or construct a legal theory on [his] behalf."  Whitney v. State of New Mexico,

113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing Hall, 935 F.2d at 110)).

       Pursuant to Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to

amend] when justice so requires."  "Refusing leave to amend is generally only justified

upon a showing of undue delay, undue prejudice to the opposing party, bad faith or

dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility

of amendment."  Bylin v. Billings, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting Frank v.

U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)).  Furthermore, Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms,
> permit a party to serve a supplemental pleading setting out any
> transaction, occurrence, or event that happened after the date of the
> pleading to be supplemented.  The court may permit supplementation
> even though the original pleading is defective in stating a claim or
> defense.  The court may order that the opposing party plead to the
> supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).  Motions to supplement are addressed to the sound discretion of

the court.  Gillihan v. Shillinger, 872 F.2d 935, 941 (10th Cir. 1989).  "The court should

apply the same standard for exercising its discretion under Rule 15(d) as it does for

deciding a motion under Rule 15(a)."  Southwest Nurseries, LLC v. Florists Mut. Ins.,

Inc., 266 F. Supp.2d 1253, 1256 (D. Colo. 2003).  A motion to amend or supplement a

complaint is futile if, notwithstanding the amendment, the complaint "would be subject to

dismissal."  Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175

F.3d 848, 859 (10th Cir. 1999).

Here, almost three months after Judge Blackburn made the findings above with respect to the claims in the Third Amended Complaint, plaintiff moved to amend that pleading, to join additional parties, and to file the 86-page Fourth Amended Complaint which he has tendered to the court (Docket Nos. 78-1 and 78-2).  Plaintiff asserts the following in his motion.  Since the filing of his Third Amended Complaint, he has discovered additional acts and/or omissions by non-parties to this action which he claims violate his civil rights.  He seeks to amend his Third Amended Complaint to allege facts sufficient to state claims for relief that are plausible on their face with respect to the following claims:

> 1) Violation of Plaintiff's right to due process under the Fifth and Fourteenth Amendments by Defendants in applying AR 300-26 and censoring Plaintiff's mail and reading material.
>
> 2) Violation of Plaintiff's right to equal protection under the Fourteenth Amendment by Defendants in applying AR 300-26 and censoring Plaintiff's mail and reading material.
>
> 3) That AR 300-26 is unconstitutionally vague, ambiguous, and/or overly broad.
>
> 4) Violation of Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment by Defendants in failing to protect Plaintiff.
>
> 5) Violation of Plaintiff's right to be free from double jeopardy under the Fifth Amendment by Defendants in failing to protect Plaintiff.
>
> 6) Violation of Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment in failing to provide dental care and treatment to Plaintiff.
>
> 7) Injunctive relief enjointing [sic] Defendants from censoring and denying Plaintiff's non-sexually explicit mail and reading material in the future.
>
> 8) Injunctive relief ordering Defendants to provide dental care and treatment to Plaintiff in the future.

(Docket No. 78 at 3-4).  Plaintiff asserts that the amendments to the above claims relate back to the date of the Third Amended Complaint because "such amendments assert claims that arose out of the conduct transactions and occurrences that Plaintiff attempted to set out in his original Third Amended Complaint."  (Docket No. 78 at ¶ 7).

In addition, plaintiff seeks to amend his Third Amended Complaint to add the following claims which he asserts also relate back to the date of the Third Amended Complaint:

> 9) Violation of Plaintiff's right to be free from double jeopardy under the Fifth Amendment by Defendants in applying AR 300-26 and censoring Plaintiff's mail and reading material.
>
> 10) Violation of Plaintiff's right to equal protection under the Fourteenth Amendment by Defendants in failing to protect Plaintiff.
>
> 11) Violation of Plaintiff's right to equal protection under the Fourteenth Amendment by Defendants in failing to provide dental care and treatment to Plaintiff.

(Docket No. 78 at 4-5).

Furthermore, plaintiff seeks leave to supplement and amend the Third Amended Complaint to add the following claims that allegedly happened after the date of that pleading and to join the following individuals as party defendants:

> 12) Violation of Plaintiff's freedom of speech under the First Amendment by Doug Diedrich and Teresa Reynolds in applying AR 300-26 and censoring Plaintiff's mail and reading material from January 5, 2010 to June 23, 2010.
>
> 13) Violation of Plaintiff's right to due process under the Fifth and Fourteenth Amendments by Doug Diedrich and Teresa Reynolds in applying AR 300-26 and censoring Plaintiff's mail and reading material from March 2, 2010 to May 3, 2010.
>
> 14) Violation of Plaintiff's right to equal protection under the Fourteenth Amendment by Doug Diedrich and Teresa Reynolds in applying AR 300-

26 and censoring Plaintiff's mail and reading material from January 5, 2010 to June 23, 2010.

15) Violation of Plaintiff's right to be free from double jeopardy under the Fifth Amendment by Doug Diedrich and Teresa Reynolds in applying AR 300-26 and censoring Plaintiff's mail and reading material from January 5, 2010 to June 23, 2010.

16) Violation of Plaintiff's right to privacy of his protected health information pursuant to the Health Insurance and Accountability Act of 1996 by Stephanie Engler in disclosing Plaintiff's protected health information to third parties without Plaintiff's authorization or agreement.

17) Defamation of Plaintiff's reputation by Stephanie Engler in publishing and republishing false and defamatory statements to third parties regarding Plaintiff sexually assaulting a 10 year-old boy, all criminal charges of which Plaintiff was acquitted of committing by a jury in a court of law.

(Docket No. 78 at 5-6).

Three and one half months later, plaintiff filed his Motion for Leave to Amend and Supplement Plaintiff's Proposed Fourth Amended Complaint and to Join Additional Parties. (Docket No. 118). Plaintiff asserts the following in that motion. After filing his previous motion for leave to amend (Docket No. 78), James D. Wishart, D.D.S., Mary Jo McClellan, Lynn Erickson, and Dolores Montoya engaged in acts and/or omissions and conduct related to plaintiff's requests for reasonable and necessary dental care and treatment with respect to replacement of a lost crown from one of his molars and for a full root canal to alleviate a severe toothache that developed subsequently in the same tooth, which violates plaintiff's Eighth Amendment right to be free from cruel and unusual punishment in addition to those violations alleged in his proposed Fourth Amended Complaint. In addition, defendant Zavaras has resigned as Executive Director of the CDOC, and Tom Clements has been appointed as the successive

Executive Director of the CDOC, necessitating that he be joined as a party to this action based upon plaintiff's claims for prospective, injunctive relief against the current Executive Director of the CDOC.  Plaintiff has tendered a seventeen-page Supplement to Fourth Amended Complaint (Docket No. 118-1).

Defendants seek the denial of both motions.  With regard to the first, defendants assert that the "Plaintiff fails to meet the standards for amendment of pleadings. Moreover, his proposed fourth amended complaint is in excess of **85 pages long**, over **323 paragraphs**, seeks to add parties, and asserts **14 claims for relief** over two years after filing his original complaint.  The proposed amended complaint is prolix, vague, and violates the requirements of Rule 8."  (Docket No. 85 at 3) (emphasis in original). More specifically, defendants assert the following.

**Timeliness.**  Defendants contend that the first motion should be denied as untimely, noting that they have litigated this case for over two years, and plaintiff is now attempting to resurrect previously-dismissed claims and to assert 13 additional claims against multiple new defendants.  Defendants contend that to allow plaintiff to assert these claims against multiple new defendants is prejudicial.  Moreover, it is asserted that plaintiff offers no explanation as to why the bulk of the additional claims were not asserted in his original Complaint, or his First, Second, or Third Amended Complaints. Defendants contend that plaintiff knew or should have known the individuals and facts set forth in his proposed Fourth Amended Complaint at the time he filed his four previous pleadings.  Despite that fact, plaintiff's case "has inexplicably morphed from a single First Amendment claim regarding censorship, into an 86 page, 323 paragraph complaint asserting fourteen claims for relief."  (Docket No. 85 at 5).  Defendants argue

that plaintiff was aware of the alleged conduct that forms the basis of the requested

amendment some time ago, noting that plaintiff states in his motion: "Plaitniff [sic]

submits that the amendment to his Third Amended Complaint regarding such

amendments assert claims that arose out of the conduct, transactions and occurrences

that Plaintiff attempted to set out in his original third Amended Complaint" and "Plaintiff

also seeks leave to amend his Third Amended Complaint to add the following additional

claims that also related back to the date of such pleading . . . ." (Docket No. 85 at 5-6,

citing Docket No. 78 at 7, ¶¶ 7-8).

**Futility.**  Defendants next assert that the proposed amendment are futile.  First,

they contend that the proposed pleading fails to comply with the pleading requirements

of Fed. R. Civ. P. 8 and is prolix and vague, once again noting that it is in excess of 85

pages long, over 323 paragraphs, seeks to add new parties, and asserts fourteen

claims for relief over two years after filing his original complaint.  In addition, defendants

assert that the deficiencies associated with the proposed amended complaint are

numerous, noting the following examples.  Plaintiff seeks to add the Executive Director

and a prison warden as defendant, yet a defendant cannot be liable under § 1983

unless personally involved in the deprivation.  Also, defendant assert there is no merit to

the resurrected previously-dismissed claims, alleged violations of his right to be free

from double jeopardy under the Fifth Amendment, alleged equal protection claims, a

claim under the Health Insurance Portability and Accountability Act (HIPAA), and his

state law libel claim.

With regard to the plaintiff's motion to supplement his tendered Fourth Amended

Complaint and to join even more additional parties (Docket No. 118), defendants assert

the following.  (Docket No. 124).   Defendants note that plaintiff's motion was filed

approximately five months after the deadline to amend pleadings, and they assert that

the plaintiff has not demonstrated good cause for amendment of the Scheduling Order.

In addition, plaintiff failed to file a proposed amended complaint with his submission and

instead filed a "Supplement to Fourth Amended Complaint."  As defendants note,

adding this "Supplement" would make his proposed Fifth Amended Complaint in excess

of 102 pages, over 340 paragraphs, add parties, and assert 16 new claims for relief

approximately three years after filing his original Complaint.  Furthermore, defendants

assert, as before, that the proposed amendments are prolix, vague, and futile and

violate the requirements of Rule 8.

**Resurrected Claims.**

The court will begin with the claims that were previously dismissed without

prejudice which plaintiff apparently seeks to resurrect in his first motion to amend.

**Unconstitutionality of the AR on its Face.**  In Claim Five of the tendered

Fourth Amended Complaint, plaintiff claims that AR 300-26 is unconstitutionally vague,

ambiguious, and/or overly broad on its face.  (Docket No. 78-2 at 31).  This court,

however, previously found in its previous report and recommendation (Docket No. 57 at

15) that the plaintiff's challenge to the AR "on its face" should not survive based upon

the findings in Frazier v. Ortiz, 2010 WL 924254 (D. Colo. Mar. 10, 2010).  This court

thus recommends that the plaintiff not be permitted to amend to reassert his challenge

to the AR on its face.

**Censorship Due Process Claim.**  In his proposed Fourth Amended Complaint,

plaintiff alleges in Claim Two that the censorship of his reading material constitutes a

13

Fifth Amendment[4] violation of Due Process by defendants Nyez, Holst, Milyard, Diedrich, Reynolds, and Zavaras.  As this court stated in its previous report and recommendation, "the requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands' . . . ."  Wilkinson v. Austin, 545 U.S. 209, 224 (2005).  In Procunier v. Martinez, 416 U.S. 396 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989), the Court held that "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards."  Id. at 417.  The procedural threshold was satisfied in Martinez by the requirements that "an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved of the correspondence."  Id. at 418-19.

Here, the allegations in the tendered Fourth Amended Complaint indicate that the plaintiff received adequate procedural due process with regard the vast majority of the censorship decisions.  His own pleadings show that in those instances, he was notified of the questionable materials, the materials were reviewed by a facility reading committee, and the plaintiff had a right to appeal the committee's decision to a CDOC central reading committee, which he exercised in most cases.  See Jordan v. Sosa, 577 F. Supp.2d 1162 (D. Colo. 2008); Strope v. Collins, 492 F. Supp.2d 1289, 1297-98 (D. Kan 2007) (inmate plaintiffs were afforded all of the procedural due process that was

---

[4]Plaintiff's failure to cite the correct Amendment is not fatal to his claim.

constitutionally required in the denial of access to publications by being given written notice of the withholding of the magazines and having the opportunity to grieve the censorship and appeal those decisions to prison officials who were not involved in the original censorship decisions.).   Therefore, plaintiff was afforded an adequate procedural protection to comply with due process requirements for most of the instances alleges.   In this pleading, however, plaintiff also details some instances in which he appealed but never received a ruling.   See Fourth Amended Complaint, Docket No. 78-2, ¶¶ 190-205.   The court recommends that the plaintiff be permitted to amend his pleading by allowing Claim Two as it pertains only to those referenced paragraphs.

**Equal Protection Claim.**   In Claim Three of the tendered Fourth Amended Complaint, plaintiff once raises an equal protection claim (now against defendant Jimerson, Nycz, Holst, Milyard, Diedrich, Reynolds, and Zavaras) based upon censoring, restricting, and denying plaintiff numerous magazines, books, mail, and other reading material while permitting other similarly-situated sex offenders to receive the same magazines, resulting in disparate treatment of plaintiff and others similarly situated to plaintiff.   Earlier in that pleading, plaintiff avers that inmate Bryon Ortiz was permitted to receive Maxim magazine, and Eric Chapman was permitted to receive Rolling Stone magazine.   (Docket No. 78-2 at 20, ¶ 223).

"The Equal Protection Clause requires the government to treat similarly situated people alike. . . .   In order to assert a viable equal protection claim, plaintiff[] must first make a threshold showing that [he was] treated differently from others who were similarly situated to [him]."   Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998).

Previously, plaintiff did not identify any similarly-situated inmates who were treated

differently.  See Smith v. Ortiz, 2006 WL 620871, *3 (10th Cir. Mar. 14, 2006).  See also

Hernandez v. Soares, 2006 WL 2050990, *6 (D. Colo. July 20, 2006) (Civil Action No.

02-cv-01495-MSK-BNB).  While he has now averred that two other sex offenders have

received some of the magazines at issue, plaintiff has not averred that they have similar

restrictions with regarding to receipt of reading material based upon their particular

offenses.  In any event, "[t]o state an equal protection claim where no suspect class is

involved," plaintiff must not only show that he is similarly situated to other inmates who

were treated differently, but he must also show that "the difference in treatment bears

no rational relation to legitimate penological interests."  Deberry v. Davis, 2011 WL

1258509, at *4 (D. Colo. Mar. 31, 2011) (citing Fogle v. Pierson, 435 F.3d 1252, 1261

(10th Cir. 2006)).  Plaintiff has made no such specific averments in his pleadings.

Accordingly, it is recommended that the plaintiff not be permitted to reinstate his equal

protection claim.

      **Failure to Protect.**  In Claim Seven of the proposed Fourth Amended Complaint,

plaintiff once again claims an Eighth Amendment violation based upon an alleged failure

to protect by defendants Limbris, Milyard, and Zavaras.   Plaintiff's similar claim in the

Third Amended Complaint, in which he asserted that he was assaulted by another

inmate in October 2007 and that defendants should have known that as a convicted sex

offender, plaintiff was subject to assaults by other inmates, was dismissed without

prejudice.

      As this court stated in its previous report and recommendation, with regard to a

prisoner's failure to protect claim, the Tenth Circuit has stated:

> "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." . . .  "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." . . .  In *Farmer* [*v. Brennan*, 511 U.S. 825, 833 (1994)], the Supreme Court clarified the "deliberate indifference" standard, explicitly rejecting a purely objective test and holding that the Eighth Amendment deliberate indifference standard has a subjective component. . . .  A prison official who "knows of and disregards an excessive risk to inmate health or safety" is deliberately indifferent for these purposes. . . . Therefore, in order to establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm," the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component. . . .

Benefield v. McDowall, 241 F.3d 1267, 1270-71 (10th Cir. 2001) (citations omitted).

Furthermore, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

As the Tenth Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." . . .  "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part." . . . .

> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . .  In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .

> In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).

While the plaintiff has provided additional factual averments in his tendered Fourth Amended Complaint, viewing that pleading in the light most favorable to the plaintiff, this court finds that the plaintiff has not alleged any specific facts which plausibly support the requisite personal involvement of the defendants in the failure to protect claim.  With regard to defendant Zavaras, plaintiff merely contends that a rehabilitative report for plaintiff was sent to Zavaras, that there were "special needs for possible protective custody due to the wide dissemination by the media of the facts of and trial of his case regarding sex offenses and for his mental illness" (Docket No. 78-1 at 13, ¶ 25), but that plaintiff was nevertheless assigned to Sterling Correctional Facility ("SCF") even though other sex offenders at the same time were sent to Freemont Correctional Facility ("FCF").  There is no allegation, however, that the rehabilitative report indicated any particular substantial risk of serious harm to the plaintiff.  Furthermore, plaintiff does not allege that Zavaras had any personal knowledge of any specific threat to the plaintiff at SCF or of any "special needs" plaintiff purportedly had.

Plaintiff avers in his tendered pleading that

upon inquiry as to whether Plaintiff had any known enemies at any
correctional facilities in the State of Colorado that would prohibit his
assignment to such facilities, Plaintiff advised such unknown agents and
employees of DOC that while in the custody of the Larimer County
Sheriff's Department, Plaintiff had received a letter from an inmate at SCF
named Uriah Ward, whose acquaintance Plaintiff had previously made
while Ward and Plaintiff were both in the custody of the Larimer County
Sheriff during the same time period, wherein Ward advised Plaintiff that
numerous inmates at SCF had become familiar with Plaintiff and the fact
that Plaintiff had been convicted of sex offenses due to Plaintiff's case
being highly publicized by the media, and that based upon those
numerous inmates' statements indicating their desires to inflict serious
bodily injury or death upon Plaintiff due to his conviction of sex offenses,
Plaintiff should not be assigned to SCF because of the likelihood that
other inmates at SCF would attempt to assault and/or murder Plaintiff if he
was assigned to that specific facility.

(Docket No. 78-1 at 11-12, ¶ 20).   Plaintiff, however, does not aver that any of this

information was transmitted to any of the named defendants.   Furthermore, no specific

threats at SCF were identified.

Plaintiff further asserts in his tendered pleading that on October 17, 2007, he was

advised by his cellmate, Jerry Nichols, that he would no longer permit plaintiff to live in

the same cell with him in light of Nichols' discovery that plaintiff was a sex offender.

(Docket No. 78-1 at 14-14, ¶ 31).   Plaintiff then avers that defendant Limbris thus

transferred plaintiff to a different cell.   (Docket No. 78-1 at 15, ¶ 31).   Significantly,

however, plaintiff does not aver that Nichols made any threat to harm plaintiff or that any

of the defendants were aware of any threat by Nichols to harm plaintiff.   Thus, while

plaintiff avers that on October 18, 2007, Nichols came into plaintiff's new cell and

assaulted and battered plaintiff, this court finds that plaintiff has still failed to state a

failure to protect claim.

**Dental Claim.**   In Claim Ten of his tendered Fourth Amended Complaint (Docket

No. 78-2 at 35-36), plaintiff asserts an Eighth Amendment Claim against defendant Zavaras based upon the plaintiff's failure to receive certain dental services.  Once again, he raises in such claim his failure to receive semi-annual cleanings while he was at SCF.  More specifically, he asserts that he submitted a request for sick call on or about July 10, 2007, to the SCF Dental Clinic, asking for an appointment to have his teeth cleaned, which was denied by non-party Dr. Ferno who advised that routine dental cleanings are not a service provided by the CDOC.  Plaintiff submitted a second request on August 11, 2007, asking if he could be scheduled to have his teeth cleaned if he compensated the CDOC for the expenses associated therewith, but non-party Dr. Ferno responded that the CDOC cannot be paid to receive a teeth cleaning and that the CDOC would provide dental care if plaintiff qualified therefor, but at the time of the request, plaintiff had only light deposit on his teeth, and, therefore, he did not have a current need for teeth cleaning.  Dr. Ferno, however, never examined plaintiff, and the dentist who had previously examined him at DRDC said plaintiff's teeth needed to be cleaned.  Inmates at facilities other than SCF received cleanings.  When plaintiff was transferred to another facility on February 10, 2009, plaintiff requested an appointment for his teeth to be cleaned, which was performed.  Plaintiff asked that dentist as to the frequency with which he could receive teeth cleanings and was told that pursuant to DOC policy, plaintiff's teeth would be cleaned no more frequently than once per year, notwithstanding the American Dental Associations's recommendation that cleanings be done at a minimum of once every six months.

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001).  "In keeping with the principle

that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id.   However, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted).

        In this case, this court once again finds that plaintiff has failed to allege facts, which if proven, would support a finding that his need for dental cleaning by a dental professional was a sufficiently serious medical need.  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999).  Here, plaintiff's allegations in the tendered Fourth Amended Complaint with respect to the delay in having his teeth cleaned are insufficient to meet the objective standard. See Crownhart v. Hernandez, 2009 WL 3273580, * (D. Colo. Oct. 9, 2009) (Inmate alleged that he had a toothache and needed a molar to be cleaned and complained about various one-month delays.  Court found that the inmate's pleading failed to allege facts, which if proven, would support a finding that his need for dental treatment was a sufficiently serious medical need.).  The court thus finds that the plaintiff should not be permitted to amend to reassert his Eighth Amendment claim concerning his dental care as it pertains to the frequency of his cleanings.

21

**New Claims.**

Plaintiff also seeks to add numerous new claims and new defendants in his

tendered pleading and in his proposed supplements to that tendered pleading.  These

claims include an expansion of his failure to protect claim (Claim Seven in the tendered

Fourth Amended Complaint),[5] expansion of his Eighth Amendment dental claim (Claim

Ten of the tendered pleading[6] and Claim Fifteen in the supplements to his tendered

pleading[7]), double jeopardy claims (Claims Four and Eight of the tendered pleading),[8]

---

[5]**Failure to Protect.**  In plaintiff's factual averments which related to his  failure to protect claim contained in Claim Seven of the tendered pleading, plaintiff for the first time raises factual claims that from about October 28, 2007, until February 9, 2009, he "was threatened, intimidated, extorted, assaulted and robbed of his property by inmates in the new cell house to which he was transferred and advised Brian Uhrich, Plaintiff's case manager during that period of time, Lieutenant Little, the SCF gang coordinator, and Milyard by letter dated January 1, 2007 (sic), that he was being subjected to the aforesaid acts by other inmates and demanded from Milyard in such letter that he be transferred from SCF to FCF immediately, to which Milyard never responded."  (Docket No. 78-1 at 17, ¶ 38).  In addition, plaintiff makes further factual averments regarding Milyard's subsequent refusal to transfer plaintiff out of SCF.  (See Docket No. 78-1 at 17-18).

[6]**Dental Claim.**  Plaintiff claims that after he finally had his teeth cleaned at FCF, on an unspecified date he asked for replacement of a lost crown and for a root canal to alleviate a severe toothache in one of his teeth.  Plaintiff, however, was advised by Dr. Wishart that pursuant to DOC policy, such procedures are not performed at DOC facilities and that plaintiff could elect to consent to having the tooth that needed treatment pulled or to seek such care and treatment from a private health care provider requiring plaintiff to be responsible financially for such treatment, as well as for the cost for two CDOC correctional officers to escort him to and from the provider's location. Plaintiff has thus been required to seek such care.

[7]**Dental Claim Supplements.**  More specifically, plaintiff asserts the following in the claims he seeks to add to his proposed Fourth Amended Complaint.  Defendants have refused to provide timely authorization for plaintiff to receive treatment for the crown he lost in September 2009 and a needed root canal.  He seeks to add as defendants James D. Wishart, D.D.S., Mary Jo McClellan (who assisted Wishart), Lynn Erickson (former FCF Health Services Administrator), Dolores Montoya (current FCF Health Services Administrator), and Thomas Clements (the current Executive Director

---

of the CDOC).  On March 31, 2010, Wishart and McClellan performed a partial root canal in the upper portion of plaintiff's molar that was the source of his toothache and advised that plaintiff's private provider, Dr. Smith, would need to remove the nerves in the roots of such tooth.  Wishart and McClellan also placed a temporary filling in that molar.  On April 14, 2010, Dr. Smith declined plaintiff's request for treatment because of an "ineffective referral" to him by defendants.

Plaintiff located another provider, Dr. Giannetto, and deposited the funds requested in his inmate trust fund for his transportation and security to such appointments.  However, on September 16, 2010, Erickson and McClellan advised plaintiff that Dr. Giannetto died on September 12, and plaintiff would be required to request separate authorization if he desired to seek treatment from another provider.  At the same time, McClellan advised plaintiff that if he developed pain again in that tooth, he should immediately notify her in order to receive treatment and antibiotics.

Plaintiff subsequently found another provider, Dr. Hurd, who agreed to provide the needed treatment. On October 27, 2010, plaintiff sought authorization for Dr. Hurd from Erickson.

On December 10, 2010, the temporary filling fell out, and plaintiff put in a request for sick call.  Plaintiff developed a severe toothache during the next three days, and on December 10, 2010, plaintiff submitted a second request for sick call.  On December 15, 2010, at 6:30 a.m., his toothache had become so severe that he advised Sergeant D. Holland of his need to be seen by Wishart and McClellan on an emergency basis. Holland contacted the FCF Dental Department, but by 12:30 p.m., plaintiff had not received a response.  The next day, plaintiff advised another officer, Stuller, of his need for emergency care.  Stuller contacted the Dental Department, and Stuller subsequently advised plaintiff that the Dental Department personnel had determined that plaintiff's severe toothache did not warrant being seen on an emergency basis and that plaintiff was required to submit another request for sick call.  Plaintiff did so the following day, but in response, Wishart and McClellan advised plaintiff that his previous request for treatment had been received and admonished plaintiff not to submit any additional requests for such treatment.  Thereafter, on January 31, 2011, plaintiff contacted Erickson by letter about the lack of care and treatment and advised of his intent to seek redress through the grievance procedure and ultimately through litigation if Wishart and McClellan refused to treat plaintiff within fourteen days.

On February 25, 2011, McClellan advised plaintiff that Erickson was no longer employed by CDOC and that Montoya, Erickson's successor, had lost the documentation plaintiff submitted on October 27, 2010.  Plaintiff was required to resubmit such documentation.  On March 2, 2011, without administering anesthesia, Wishart and McClellan commenced removing the inflamed nerve from the roots of plaintiff's molar and put in a new temporary filling.

23

new equal protection claims (Claims Nine and Eleven of the tendered pleading),[9] a

_____

Plaintiff suffered relentless, often unbearable, pain from December 10, 2010, to March 2, 2011, which often prevented him from sleeping, precluded him from chewing food on the left side of his mouth, and required him to take as many as 20 ibuprofen or acetaminophen tablets in one day just to make such pain tolerable.

Clements has developed and/or maintained a policy of CDOC prohibiting reasonable and necessary dental care and treatment of sufficiently serious medical needs of prisoners, including plaintiff.

Based on the above, plaintiff seeks to raise his Fifteenth Claim for Relief against Wishart, McCleallan, Erickson, and Montoya, alleging a violation of the Eighth Amendment, and in his proposed Claim Seventeen, he seeks a permanent injunction against Clements seeking an order directing Clements to provide replacement of plaintiff's lost crown, a root canal to alleviate his severe toothache, and teeth cleanings with a minimum frequency of once every six months to comply with such recommendation by the American Dental Association.

[8]**Double Jeopardy.**  In Claim Four of the tendered Fourth Amended Complaint, plaintiff claims that defendants Jimerson, Nycz, Holst, Milyard, Diedrich, Reynolds, and Zavaras committed Fifth Amendment violations of Double Jeopardy by censoring, restricting, and denying the various reading materials for the purpose of imposing punishment against him for exercising his right to trial by jury and because he is a sex offfender, notwithstanding that he previously had punishment imposed through his sentence to incarceration.  (Docket No. 78-2 at 30-31).  In Claim Eight of the tendered pleading, plaintiff claims that defendants Limbris, Milyard, and Zavaras committed a Fifth Amendment violation based upon their failure to protect plaintiff.  (Docket No. 78-2 at 33-34).

[9]**Equal Protection.**  In Claim Nine of the tendered pleading, plaintiff alleges a Fourteenth Amendment equal protection claim based upon defendant Zavaras's alleged failure to protect the plaintiff by assigning him to SCF while assigning other similarly-situated sex offenders to FCF.  (Docket No. 78-2 at 34-35).  Plaintiff, however, has not averred that he was the only sex offender assigned to SCF.  Similarly, in Claim Eleven of the tendered pleading, plaintiff alleges a Fourteenth Amendment equal protection claim against Zavaras based upon his failure to provide dental care, including routine teeth cleaning, of inmates at SCF while providing such routine teeth cleanings to other similarly-situated inmates at CDOC facilities other than SCF.  (Docket No. 78-2 at 37-38).

HIPAA claim (Claim Thirteen of the tendered pleading),[10] and a defamation - libel per se

claim (Claim Fourteen of the tendered pleading).[11]

"[A] district court acts within the bounds of its discretion when it denies leave to

amend for 'untimeliness' or 'undue delay'.  Prejudice to the opposing party need not be

shown also."  First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127,

1133 (10th Cir. 1987).  I conclude that amendment and supplementation of the Third

Amended Complaint as proposed (except for the due process claim discussed above) is

inappropriate because it will enlarge the scope of issues before the court and add

numerous defendants at this late date, which will unduly prejudice the defendants.

Plaintiff could have raised all but the additional dental claims earlier in this litigation.

Plaintiff has had access to the information that forms the basis for his various new

claims, much of which since the commencement of this action; there is no indication

that most of these claims arose only after new information was gleaned through

---

[10]**HIPAA.**  In Claim Thirteen of the tendered Fourth Amended Complaint, plaintiff
seeks to add a claim against a new defendant, Engler, for a HIPAA violation based
upon her alleged disclosure of personal health information to third parties.

[11]**Defamation - Libel Per Se.**  In the last claim of the tendered Fourth Amended
Complaint, Claim Fourteen (Docket No. 78-2 at 26, 38-41), plaintiff seeks to add
another claim against Engler for defamation and libel per se based upon alleged
publications of false and defamatory statements regarding plaintiff to numerous third
parties (including to Diedrich, Reynolds, CDOC agents and employees of the mailroom,
the FCF Reading Committee Chairperson, the Central Reading Committee Chairperson,
and all other agents and employees with access to plaintiff's file).  Engler allegedly
reported that plaintiff was convicted of sexually assaulting a ten year old boy, that
plaintiff arranged to meet that boy in person with sexual intent, and that plaintiff used
coercion and a position of trust to have unwanted sexual contact with the boy.  Plaintiff
claims Engler's statements were patently false as evidenced by plaintiff's acquittal of all
charges relating to such boy following a jury trial in Larimer County District Court, and
plaintiff informed Enlger of the falsity of such claims on or about December 21, 2009.

25

discovery.  With regard to the additional claims such as the dental, HIPAA, and

defamation claims, plaintiff can bring such claims in separate actions after the requisite

exhaustion of administrative remedies, although the HIPAA claim is clearly futile, which

is another basis for not permitting the pleading to be amended to include such a claim.

A HIPAA claim is futile because there is no private right of action under HIPAA.  See

Wilkerson v. Shinseki, 606 F.3d 1256, 1268 (10th Cir. 2010) ("Any HIPAA claim fails as

HIPAA does not create a private right of action for alleged disclosures of confidential

medical information.") (citing Acara v. Banks, 470 F.3d 569, 571 (5th Cir. 2006)).   In

addition, plaintiff's double jeopardy claims are also futile. "[T]he Double Jeopardy

Clause simply does not apply to proceedings that are not criminal in nature, thus further

amendment would be futile."  Deberry v. Davis, 2011 WL 1258509, at * 5 (D. Colo. Mar.

31, 2011).

        In sum, this court recommends that plaintiff be permitted to amend his pleading

only with respect to his original due process claim, more specifically only with respect to

the instances in which he allegedly appealed decisions about certain publications but

allegedly never received a ruling.  See Fourth Amended Complaint, Docket No. 78-2, ¶¶

190-205.

        **WHEREFORE,** for the foregoing reasons it is hereby

        **RECOMMENDED** that the Plaintiff's Motion for Leave to Amend Third Amended

Complaint, to Join Additional Parties and to File Fourth Amended Complaint (Docket

No. 78) and be **granted in part and denied in part**.  More specifically, it is

recommended that the motion be granted to the extent that the plaintiff be permitted to

amend his pleading only with respect to his original due process claim, more specifically

only with respect to the the instances in which he allegedly appealed decisions about certain publications but allegedly never received a ruling.  See Fourth Amended Complaint, Docket No. 78-2, ¶¶ 190-205.  It is further recommended that the motion be denied in all other respects.

It is further **RECOMMENDED** that the Plaintiff's Motion for Leave to Amend and Supplement Plaintiff's Proposed Fourth Amended Complaint and to Join Additional Parties (Docket No. 118) be **denied**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: May 23, 2011                              s/ Michael J. Watanabe
      Denver, Colorado                         Michael J. Watanabe
                                       United States Magistrate Judge