**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 08-cv-01479-REB

WILLIAM J. HUNSAKER, JR.,

    Plaintiff,

v.

JAMES JIMERSON,
MICHELLE NYCZ,
ELIZABETH LIMBRIS,
CATHIE HOLST,
KEVIN MILYARD, and
ARISTEDES ZAVARAS, individually,

    Defendants.

## AMENDED ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT[1]

**Blackburn, J.**

    The matters before me are (1) **Defendants' Motion for Summary Judgment** [#156][2] filed July 15, 2011;[3] and (2) **Plaintiff's Motion for In Camera Production and Inspection of Privileged Documents** [#172] filed August 9, 2011. I grant the motion for *in camera* inspection, noting that defendants, in fact, did produce the subject documents in support of their motion for summary judgment. As for that motion, I grant summary

---

    [1] This order is amended solely to correct a clerical error in paragraph 5 of section IV of the original order, and supersedes and supplants my previous **Order Granting Defendants' Motion for Summary Judgment** [#179] entered September 16, 2011.

    [2] "[#156]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

    [3] The **Order of Reference** [#157] filed July 18, 2011, was withdrawn previously. (*See* **Order Withdrawing Order of Reference** [#171] filed August 9, 2011.)

judgment in favor of defendants and dismiss plaintiff's sole remaining First Amendment claim.[4]

## I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party which does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Id.** at 1518. All the evidence must be viewed in the light most favorable to the party opposing

---

[4] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the papers. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

the motion.  ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

### III.  ANALYSIS

Given the prior dismissal of other claims pled in the Third Amended Complaint (*see* Order **Overruling Objection to and Adopting Amended Recommendations of the United States Magistrate Judge** [#67] filed August 20, 2010),[5] this case presently presents a single as-applied challenge to the constitutional validity of the Colorado Department of Corrections' ("CDOC") Administrative Regulation ("AR") 300-26, which restricts the types of mail inmates may receive.  Plaintiff, a convicted sex offender, claims defendants violated his First Amendment right of free speech by censoring particular pages from and/or entire issues of certain magazines to which he subscribes. Because the regulation and the more particularized reading restrictions that flow from it are not an exaggerated response to legitimate rehabilitative goals as applied to plaintiff, I grant summary judgment in favor of defendants.

Prisoners have a First Amendment right to receive mail.  ***Thornburgh v. Abbott***, 490 U.S. 401, 407, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989); ***Frazier v. Ortiz***, 417 Fed. Appx. 768, 773 (10th Cir. March 28, 2011), ***pet. for cert. filed***, June 20, 2011 (No. 11-5220) .  Nevertheless, "the peculiar and restrictive circumstances of penal confinement . . . . impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration."  ***Jones v. North***

---

[5]  As well as the denial of plaintiff's request to amend his complaint to add further due process claims.  (**See Order Adopting in Part and Rejecting in Part Recommendation of the United States Magistrate Judge** at 2-4 [#166], filed August 5, 2011.)

3

*Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S.Ct. 2532, 2537-38, 53 L.Ed.2d 629 (1977). According, CDOC prisoners are entitled to receive mail consistent with the limitations imposed by AR 300-26. The overarching principle of the regulation is to allow inmates to posses reading material

> subject to fire, health, safety, and property allowance restrictions, unless such material poses a threat to the security or good order of the facility or office, or is determined to be contrary to public safety or the individualized rehabilitative goals set forth in writing for a specific offender by the DOC.

(Def. Motion App., Exh. D ¶ IV.A.1. at 2.) Regarding "rehabilitative goals," the regulation contemplates that "Sex Offender Treatment program DOC employees/contract workers may set more stringent individualized standards, in writing for a specific offender," which are set forth in Form AR 300-26E. (*Id.*, Exh. D ¶ IV.A.5. at 2 & Exh. C.)

Plaintiff, who was convicted of two counts of sexual assault on a child, and, thus, is classified administratively as a sex offender, was subject to such particularized reading material restrictions while incarcerated at the Sterling Correctional Facility in Sterling, Colorado. (*See id.*, Exh. D, Attachment E.) Plaintiff's individualized restrictions included a substantial list of images and content that he was precluded and prohibited from receiving. (*See id.*, Exh. C.)[6] He complains of the

---

[6] Specifically, these restrictions include the following:

> Material that is generally deemed contrary to rehabilitative interests and goals for sex offenders is as follows:
>
> 1. Sexually explicit material as defined by AR 300-26.
> 2. Pornographic material: Materials that show unclothed genitals, buttocks or female breasts.

4

3. Material that has significant risk of escalating the sex offender's deviant sexual arousal or their cycle of abuse – for example pictures of scantily clothed individuals who are depicted being humiliated, subject to an act of violence, being restrained, objectified, being otherwise degraded, or pictures of the offender's victim.
4. Material that depicts or by way of description promotes criminal sexual behavior.
5. Pictures related directly to a potential victim pool of the individual offender, such as collections of pictures of children by pedophiles.

. . . .

Should not be allowed to view above listed materials 1-5 as it may hinder his rehabilitative goals. Viewing such materials, specifically depicting adult women & male children may exacerbate his deviant sexual arousal & behavior. Should not view materials which show partially nude (without entire breasts, buttocks & genitalia clothed) adult women or male children as these materials promote his sexual assault cycle and encourage his objectification of adult women and male children.

. . . .

Offender Hunsaker should not be allowed to view material that has a risk of escalating his deviant sexual arousal or his cycle of sexual abuse. Such material is detrimental to his treatment and his ability to effectively control his sexually deviant behavior. The above 1-5 should be restricted as well as the below list of material. Possible restricted material would consist of pictures, descriptions, symbols, representations, and/or third party information that describes or implies from or about the material listed below.

1. Offender Hunsaker should not have sexually explicit material containing images or descriptions of masturbation, discharge of bodily fluids, sexual paraphernalia, voyeurism, exhibitionism, oral sex, sadism, masochism, bondage, penetration, anal sex, and/or sexual intercourse.
2. Offender Hunsaker should not have material containing images or descriptions of unclothed, transparent, and/or partially clothed individuals revealing genitals, buttocks and/or breasts of males/females.
3. Material with a risk of escalating Offender Hunsaker's deviant sexual arousal or cycle containing images or descriptions of males/females dressed sexually provocative or posed in a sexually compromising position. He should not have any material that associates alcohol, drugs, internet and sexuality.
4. Offender Hunsaker should not be allowed material containing images of males/females that promotes or portrays males/females being objectified. Material that is intended for minors should not be allowed. He should not have material that portrays minors in adult situations or as adults. He should not participate in pen pal relationships with minors. This would include material created by minors or appears to have been created by a minor.
5. Offender Hunsaker's identified victim pool is that of pre-pubescent males and females. He should not be allowed to see any material containing images or descriptions of persons under the age of 18 or

5

censorship and/or withholding of pages from or entire issues of approximately 45 issues of *Newsweek* magazine, 25 issues of *Rolling Stone* magazine, and 13 issues of *Maxim* magazine, as well as various other books, letters, photographs, and miscellaneous reading material.[7] These materials were reviewed and withheld pursuant to AR 300-26 as contrary to plaintiff's individualized rehabilitative goals.[8]

"Because the realities of running a penal institution are complex and difficult," courts afford "wide-ranging deference to . . . the decisions of prison administrators." **Jones**, 97 S.Ct. at 2538. **See also Procunier v. Martinez**, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974) (noting that "where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities"). This deference is reflected in the standards applicable to regulations of prisoners' First Amendment right to receive mail, which are permissible so long as they are "reasonably related to legitimate penological interests." **Turner v. Safley**, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Rehabilitation is clearly such a

---

> appear to be persons under the age of 18. He should not be allowed any material from or about the victims, or that appears to be from or about the victims. This does not include Sex Offender Treatment and Monitoring Program (SOTMP) reading material and/or homework assignments.

(Def. Motion App., Exh. C at 1-2.)

[7] Defendants produced conventional hard copies of all these materials as exhibits to their motion for summary judgment. I have reviewed these materials in addressing the motion for summary judgment, and thus granted the relief requested in plaintiff's motion for *in camera* production and inspection of such documents.

[8] As provided by AR 300-26, a Facility Reading Material Committee meets "as needed, but not less than every two weeks (14 calendar days), to review reading material referred to the committee by mailroom DOC employees or other DOC employees, contract workers, or volunteers." (Def Motion App., Exh. D ¶ IV.C.1.) If four or fewer pages contain objectionable content or images, the publication may be allowed with those pages removed, but if five or more pages are implicated, the publication is withheld in its entirety. (*Id.*, Exh. D ¶ IV.C.1.c. at 4.) All censored items are forwarded to the administrative head within five working days of the review. (*Id.*, Exh. D ¶ IV.C.1.b. at 4.)

legitimate penological interest. ***Pell v. Procunier***, 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).

I have determined already that AR 300-26 is facially constitutional under the four-part ***Turner*** test. (***See*** Order **Overruling Objection to and Adopting Amended Recommendations of the United States Magistrate Judge** [#67] filed August 20, 2010 (adopting **Amended Recommendations on Plaintiff's Motion for Preliminary Injunction (Docket No. 47) and Defendants' Motion To Dismiss Plaintiff's Third Amended Complaint (Docket No. 38)** at 10 [#57] filed July 9, 2010).) The only question remaining is whether the regulation is unconstitutional as applied to plaintiff. Resolution of this question turns on whether plaintiff's individualized reading material restrictions are an "exaggerated response" to the legitimate goal of rehabilitation:

> [T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns. . . . [I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

***Turner***, 107 S.Ct. at 2262. The burden is on plaintiff to demonstrate the existence of such alternatives. ***O'Lone v. Estate of Shabazz***, 482 U.S. 342, 350, 107 S.Ct. 2400, 2405, 96 L.Ed.2d 282 (1987). Plaintiff has offered no such proposed alternative here, and the arguments and evidence on which he does rely do not constitute "substantial evidence" sufficient create a genuine issue of material fact for trial. ***See Turner***, 107 S.Ct. at 2260.

Plaintiff argues first that censorship of his reading material is not rationally related

to rehabilitation because he has not yet eligible to participate in the Sex Offender Treatment and Monitoring Program ("SOTMP") and, thus, has no treatment plan thereunder. (*See* Plf. Resp. App., Exh. 1.)[9]  Yet AR 300-26 expressly permits the imposition of more stringent individualized standards "regardless of the offender's participation in the [SOTMP.]" (Def. Motion App., Exh. D ¶ IV.A.5. at 2.)[10]  Nor is there any requirement that CDOC may pursue the legitimate goal of sex offender rehabilitation only within the confines of the SOTMP.  Moreover, it is undisputed that two psychologists prepared a Mental Health Sex Offense Specific Evaluation with respect to plaintiff, which evaluation formed part of the basis of his individualized reading material restrictions, and thus he did have some form of rehabilitative plan in place. (*See* Plf. Resp. App., Exh. 1 at 22.)

Plaintiff asserts next that there is no empirical evidence to support the notion that "non-sexually explicit" reading material – by which he appears to mean non-pornographic material – creates a risk of escalating plaintiff's deviant sexual behavior. As an initial matter, I note that plaintiff's definition of what constitutes sexually explicit

---

[9]  Plaintiff devotes the initial pages of his response brief to attacking the underlying evidence supporting his convictions and the credibility of the victims' mother. (Plf. Resp. Br. at 2-3.)  Yet, as the district court noted in response to similar arguments in *Frazier*, "this case does not involve a habeas corpus petition," and thus does not offer a venue for plaintiff to contravene the underlying factual basis of his convictions. *Frazier v. Ortiz*, 2010 WL 924254 at *5 (D. Colo. March 10, 2010), *aff'd*, 417 Fed. Appx. 768 (10th Cir. March 28, 2011), *pet. for cert. filed* June 20, 2011 (No. 11-5220). Moreover, nothing in the record suggests that the CDOC acted arbitrarily in accepting the facts set forth in plaintiff's Presentence Investigation Report or the psychological evaluations performed on him as the basis for plaintiff's rehabilitation plan. *See Frazier*, 417 Fed. Appx. at 775.

[10]  Moreover, plaintiff's observation that the AR Form 300-26E form cites to a superseded section of the Colorado Sex Offender Management Board's *Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders* avails him nothing.  Because AR 300-26 is facial constitutional, it alone provides all the legitimacy required to implement the restrictions imposed.

8

material is overly cramped. Sexually explicit material may include images and content that may not constitute obscenity or pornography in the strictly legal sense. **See Guajardo v. Estelle**, 580 F.3d 748, 761-62 (5th Cir. 1978); **Aikens v. Jenkins**, 534 F.2d 751, 756 (7th Cir. 1976). Moreover, satisfaction of the rational relationship test does not require particularly precise correlation between empirical evidence and the restrictions imposed. Although a restriction may not be an exaggerated response, neither are prison officials required to adopt the least restrictive alternative to achieve the legitimate penological goal. **Thornburgh**, 109 S.Ct. at 1879-80. Prison officials here have identified particular images and content that correspond with adequate precision to the nature of plaintiff's sexual proclivities and deviancies:

> [I]t does not matter whether [the court] agree[s] with the defendants or whether the policy in fact advances the jail's legitimate interests. The only question . . . is whether the defendants' judgment was rational, that is, whether the defendants might reasonably have thought that the policy would advance its interests.

**Mauro v. Arpaio**, 188 F.3d 1054, 1060 (9th Cir. 1999) (cited in **Sperry v. Werholtz**, 413 Fed. Appx. 31, 39 n.4 (10th Cir. Feb. 14, 2011)), **cert. denied**, 120 S.Ct. 1419 (2000) (internal citations and quotation marks omitted). Nothing in the record indicates unreasonableness or irrationality in the imposition of plaintiff's individualized reading restrictions.

Finally, plaintiff argues that restricting his access to these materials was an exaggerated response because the same or similar magazines are available at unspecified CDOC "facility libraries," and moreover, were not withheld from plaintiff for the entire first year of his incarceration. **See Beard v. Banks**, 548 U.S. 521, 528, 126

9

S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006). Similarly, plaintiff points out that he has not been restricted from viewing newspapers or television programs that may contain images that would be objectionable under his individualized restrictions. Yet satisfaction of the rational relationship test does not hinge on officials' ability to eradicate every potential source of sexually titillating material that an inmate may encounter while in prison. This court is in no position to second guess an institutional determination, whether explicit or implicit, that allowing a sex offender to view fleeting images on a television screen or see them in a periodical in the library is different in kind or magnitude, or both, from allowing him to possess such materials personally.[11] **See Frazier**, 2010 WL 924254 at *5 (because "judgments regarding offender rehabilitation, like prison security, are peculiarly within the province and professional expertise of corrections officials," courts are "in no position to second-guess the professional judgment of prison officials, provided their means (regulations) are reasonably related to their objective (rehabilitation)") (citation and internal quotation marks omitted).

For these reasons, I find and conclude that plaintiff has failed to present a genuine issue of material fact regarding his as-applied challenge to the First

---

[11] Indeed, the CDOC made precisely this determination:

> While it is contrary to the offender's rehabilitative interests to read or view these materials in any location, AR 300-26 does not allow for restriction of publications being viewed by the offender in the library. Magazines cannot be checked out from the library and taken to the offender's cell. Supervising offenders in the library to eliminate their viewing of restricted materials that show scantily clad individuals or pictures of children would be unduly burdensome.
>
> Reinforcement of the offender's deviancy is much more likely through masturbation to images of children while in his cell.

(Def. Reply App., Exh. J at 10.)

Amendment validity of AR 300-26. Accordingly, defendants' motion should be granted, plaintiff's claim dismissed, and judgment entered in favor of defendants.

IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendants' Motion for Summary Judgment** [#156] filed July 15, 2011, is **GRANTED**;

2. That **Plaintiff's Motion for In Camera Production and Inspection of Privileged Documents** [#172] filed August 9, 2011, is **GRANTED**;

3. That plaintiff's First Claim for Relief, insofar as it asserts an as-applied challenge that AR 300-26 violates plaintiff's right of free speech under the First Amendment, is **DISMISSED WITH PREJUDICE**;

4. That judgment **SHALL ENTER** on behalf of defendants, James Jimerson, Michelle Nycz, Elizabeth Limbris, Cathie Holst, Kevin Milyard, and Aristedes Zavaras, in their individual capacities, against plaintiff, William J. Hunsaker, Jr., on plaintiff's First Claim for Relief, insofar as it asserts an as-applied challenge that AR 300-26 violates plaintiff's right of free speech under the First Amendment; provided, that the judgment as to this claim **SHALL BE** with prejudice;

5. That judgment **SHALL ENTER** also in accordance with my Order **Overruling Objection to and Adopting Amended Recommendations of the United States Magistrate Judge** [#67] filed August 20, 2010; provided, that the judgment **SHALL BE** with prejudice with respect to all claims against the Colorado Department of Corrections and all claims for money damages against the individual defendants in their official

capacities and without prejudice otherwise;

6. That defendants are **AWARDED** their costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

7. That this amended order **SUPPLANTS** and **SUPERSEDES** the **Order Granting Defendants' Motion for Summary Judgment** [#179] entered September 16, 2011.

Dated September 20, 2011, at Denver, Colorado.

BY THE COURT:

Bob Blackburn
Robert E. Blackburn
United States District Judge